IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| ALLYSON A. DYE | § | |
| Vs. | § | CIVIL ACTION NO. 2:03-CV-289 |
| ASSOCIATES FIRST CAPITAL<br>CORPORATION CAFETERIA PLAN, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

1.    **Introduction**.

Allyson Dye challenges the termination of her short term disability benefits and the denial

of long term disability benefits.  The court previously granted the parties' joint motion regarding trial

submissions and approved the submission of this case on the documentary evidence.    After

considering the evidence and the arguments of the parties, the court concludes that the plaintiff's

claims are barred by the Plan's limitations period.  The court renders judgment for the defendants

and dismisses this case with prejudice.

2.    **Discussion.**

   A.    **Factual Background and Procedural Posture.**[1]

Allyson Dye ("Dye") worked as a Project Manager at Associates First Capital Corporation

("Associates").  The Associates First Capital Corporation Cafeteria Plan 502 ("Plan 502") provided

short term disability benefits.  Long term disability benefits were provided by Associates First

_____

[1]        The court renders this opinion pursuant to Rule 52.  Any finding of fact contained
in this opinion that is actually a conclusion of law should be treated as such.  Any conclusion of
law contained in this opinion that is actually a finding of fact should be treated as such.

Capital Corporation Cafeteria Plan 504 ("Plan 504").  Both plans were self-funded.  Dye was

covered by both.

On June 29, 2000, Dye underwent surgery for the replacement of her right knee.  At that time,

Kemper National Services, Inc. ("Kemper") was the third-party administrator for the plans.  Dye

applied for and received approval for short term disability benefits under Plan 502.  Her benefits ran

from June 30, 2000, to September 25, 2000.  On October 9, 2000, Kemper sent a letter to Dye

terminating Dye's benefits.  Kemper cited guidelines for benefits payable for knee replacement

surgeries.

Plan 502 provided for up to 26 weeks of short term disability coverage.  Dye, however, had

been certified for only 12 weeks of benefits.  When she subsequently applied for long term disability

benefits, her claim was denied by letter dated March 28, 2001, on the grounds that she had not been

approved for, and, as a result, had not exhausted her short term disability entitlement.

Meanwhile, Dye attempted to appeal Kemper's decision to terminate her short term disability

benefits.  She pointed to statements from her doctor that she could not return to work and was having

post-operative complications.  On April 11, 2001, Kemper's Appeal Review Committee, relying

heavily on the medical records contained in the administrative record, affirmed the denial of benefits.

The letter from the Appeal Review Committee informed Dye that "[t]his second level review

decision is final and therefore not subject to further administrative review."  Likewise, the notes from

the case diary maintained by the administrator reflect that Dye orally "asked if she may appeal again"

and that the case manager informed Dye that "her appeal rights have been exhausted."  The letter did

not inform Dye of the time period for bringing a suit challenging the denial of benefits.

In connection with Citigroup Inc.'s ("Citigroup") acquisition of Associates, the Plans

changed third party administrators and no longer used Kemper as of December 2001.  As part of the

transition, Kemper was to send to Associates all of its "closed" files, which should have included

Dye's file.  Whether and to what extent this occurred is not borne out by the record.  Approximately

two years after the Appeals Committee upheld the denial of benefits, Dye, acting through counsel,

repeatedly sought information concerning her claim from Kemper.  In letters dated March 19, 2003,

April 4, 2003, April 18, 2003, and May 9, 2003, Dye requested a litany of documents from Kemper.

In the April 18th and May 9th letters, she sought the documents comprising the administrative record.

She never received any documents from the Plan, and in August 2003 she filed this case seeking to

recover benefits under ERISA.

After this case was filed, it became apparent that material portions of the administrative

record had been either lost or destroyed.  The administrator did maintain, however, an electronic

copy of a case diary.  The diary included various notes, input by the case manager, concerning Dye's

claim for benefits and Kemper's processing of that claim.  In addition, the parties conducted

discovery related to Kemper's handling of the claim.  Through this process, they were able to obtain

various medical records from Dye's health care providers.  At the conclusion of discovery, the

parties filed cross-motions for summary judgment.  Thereafter, they stipulated to have the court

decide the case on the written record.

**B.      Parties' Positions.**

Dye contends that she is entitled to reinstatement of benefits because the administrator failed

to maintain the administrative record.  This failure, according to Dye, renders it impossible for the

administrator to point to any "concrete evidence" in support of its denial of benefits.  *Vega v.*

*National Life Ins. Co.*, 188 F.3d 287, 302 (5th Cir. 1999).  Dye asks the court to retroactively reinstate

her short term disability benefits and to award long term disability benefits.

The defendants contend that Dye's claim is barred by limitations, because the Plan imposed a 120-day statute of limitations period to challenge the denial of claims for benefits.  Because Dye filed her suit outside the limitations period, the defendants ask the court to dismiss the case without reaching the merits of the benefits determination.  Alternatively, the defendants contend the court can determine, from the case diary and the evidence produced in discovery in this case, that concrete evidence existed to deny the claim for benefits.

### C.      Analysis.

Under ERISA, a cause of action accrues when a claim for benefits is formally denied.  *Harris Methodist Fort Worth v. Sales Support Services, Inc. Employee Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997).  ERISA does not provide a statute of limitations for denial of benefits lawsuits.  In the absence of such a statute, courts borrow the most analogous state statutes of limitations.  *Harris*, 426 F.3d at 337; *Hogan v. Kraft Foods,* 969 F.2d 142, 145 (5th Cir. 1996).  In Texas, the most analogous limitations period is the one governing suits on contracts; it is four years.  Tex. Civ. Prac. & Rem. Code § 16.004(a).

Several federal courts have enforced contractual limitations provisions in ERISA cases.  *See Northlake Regional Medical Center v. Waffle House,* 160 F.3d 1301, 1303 (11th Cir. 1998); *Wilkins v. Hartford Life & Accidental Ins. Co.*, 299 F.3d 945, 947 (8th Cir. 2002); *Duchek v. Blue Cross & Blue Shield of Neb.*, 153 F.3d 648, 650 (8th Cir. 1998).  During the pendency of this case, the Fifth Circuit embraced this rule in *Harris*: "Where a plan designates a reasonable, shorter time period, however, that lesser limitations schedule governs."  *Harris*, 426 F.3d at 337.  In doing so, the Fifth Circuit cited to the decisions in *Northlake* and *Doe v. Blue Cross Blue Shield of Wisconsin*, 112 F.3d

4

869, 874-75 (7ᵗʰ Cir. 1997).

The Court of Appeals' citations to *Northlake* and *Doe* are significant.  In *Northlake*, the Eleventh Circuit enforced as reasonable a 90-day contractual limitations period, triggered by the plan's decision on any administrative appeal.  The court emphasized that the time frame was consistent with other plan provisions designed to expedite the claims process.  Likewise, in *Doe*, the Seventh Circuit held that a contractual limitations period was enforceable, when it required a suit to be filed within 39 months from the first date of services on which the action is based.

The Fifth Circuit's reliance on these cases indicates that it would hold similar time periods to be reasonable.  The plan in this case provides that "no legal action may be commenced against an ERISA covered plan more than 120 days after your receipt of the decision on appeal."  The 120-day period, triggered by the final decision on appeal, is longer than the period found to be reasonable in *Northlake*.  Absent a compelling reason to the contrary, the defendants are entitled to have the case dismissed based on the contractual limitations provision.

Dye makes two arguments against enforcement of this provision.  First, she contends that the provision is void or, at a minimum, presumptively unreasonable because Texas law prohibits agreements that shorten the statute of limitations to less than two years.  Second, she contends that the "reasonableness" inquiry should depend on the type of plan at issue, and a claimant should have an extended period of time to challenge the denial of disability benefits.  The court rejects these arguments.

Dye's first position relies on a Texas statute that prohibits an agreement to shorten a statute of limitation to less than two years.  Tex. Civ. Prac. & Rem. Code § 16.070(a).  Dye's reliance on this statute is misplaced, however, because the only Texas court to address this statute in the ERISA

5

context has held it to be inapplicable to an ERISA contract.  *Hand v. Stevens Trans., Inc. Employee Benefit Plan*, 83 S.W.3d 286, 290 (Tex. App.–Dallas 2002, no pet.).  In *Hand*, the court concluded that the reasonableness of a limitations period contained in an ERISA plan was governed by federal common law as illustrated by *Northlake* and *Doe*.  The court rejected the claimant's reliance on § 16.070(a) because it found the contractual period to be reasonable.  *Id*. at 294-95 ("A state statute prohibiting the shortening of a statute of limitations is not binding on ERISA claims.").  Given that the only Texas authority on point is adverse to Dye, the court rejects her first argument.

Dye's second argument focuses on the type of plan at issue.  She argues that the federal cases have not enforced a 120-day contractual limitations period to a suit challenging the denial of disability benefits, although she concedes that courts have applied such provisions in other contexts. Dye's argument accurately recites that no court has applied a 120-day period to a claim involving a disability plan; however, her position fails to accept that numerous courts have found reasonable similar time periods without regard to the type of plan at issue.  In other words, courts have enforced short contractual limitations provisions in a wide variety of cases.  *See, e.g.*, *Northlake*, 160 F.3d at 1302-03 (applying 90-day period for denial of health care benefits based on pre-existing condition); *Sheckley v. Lincoln Nat'l Corp.*, 366 F. Supp. 2d 140 (D. Me. 2005)(applying six month limitation period to claim involving retirement plan); *Davidson v. Wal-Mart Associates Health and Welfare Plan*, 305 F. Supp. 2d 1059 (S.D. Iowa 2004)(applying 45-day contractual limitations period to claim involving the denial of surgery pre-certification); *Segerdahl v. The Segerdahl Corp. Employee Stock Ownership Plan*, 2006 WL 1030195 (N.D. Ill. April 17, 2006)(applying 90-day contractual limitations period to claim involving undervaluing of stock in employee stock ownership plan).

The fact that courts have applied similar limitations periods does not mean the one in this

case is enforceable.  In *Northlake*, the court emphasized  that 90 days might not be reasonable in all

cases. *Northlake*, 160 F.3d at 1304.  The court focused on three facts to conclude that the period was

reasonable.  First, the court found no evidence that the 90-day period was a subterfuge to avoid

litigation.  The plan in that case was self-funded and did not exist to make a profit.  Second, the plan

in *Northlake* expedited the review process by imposing similar time limits on the administrator to

complete the review.  Finally, the 90 days did not begin to run until after the exhaustion of any

internal appeals.  *Northlake*, 160 F.3d at 1304.  Based on these facts, the court found the 90-day

period to be reasonable.

The facts in this case are similar to those in *Northlake*.  Dye has offered no evidence that the

120-day contractual period is a subterfuge to avoid lawsuits.  Indeed, as in *Northlake*, the plan

involved here is self-funded by contributions from the employer and the employees.  In addition, the

plan requires prompt notification to the employee of a decision on any appeal.  Generally, this period

is within 60 days after the receipt of an appeal but may be extended for up to 120 days.  Finally, the

120-day period to bring a federal case does not begin to run until after the disposition of the internal

appeal process.  Based on the court's analysis in *Northlake*, the provision at issue in the present case

is reasonable.

The court recognizes that the contractual limitations provision is far shorter than the time

period the court would ordinarily borrow from Texas state law.  This comparison does not dispose

of the question of reasonableness, given the peculiarities of ERISA litigation.  In *Doe*, the court

stated:

> A suit under ERISA, following as it does upon the completion of an ERISA-required
> internal appeals process, is the equivalent of a suit to set aside an administrative
> decision, and ordinarily no more than 30 or 60 days is allowed within which to file
> such a suit. . . . Like a suit to challenge an administrative decision, a suit under

> ERISA is a review proceeding, not an evidentiary proceeding.  It is like an appeal, which in the federal courts must be filed within 10, 30 or 60 days of the judgment appealed from.

*Doe*, 112 F.3d at 875 (internal citations omitted).  This language recognizes that many federal statutes and rules provide similar deadlines, depending on the nature of the case or the procedures governing its review.

Finally, the court has considered whether a plan administrator should be required to notify a claimant when an abbreviated limitations period applies to a suit for benefits.  In *Northlake*, the court observed only that "it would have been *preferable* for the Plan Trustees to have given Northlake written notice of the 90-day limitations period when they denied the claim for benefits." *Northlake*, 160 F.3d at 1304 n.3 (emphasis added).  Given this language, the failure to provide written notice did not render the provision unreasonable.  In light of the similarities between this case and *Northlake*, the court concludes that the 120-day contractual limitations period is reasonable.  The Fifth Circuit's citations to *Northlake* and *Doe* in *Harris* indicates that it would reach the same result under these facts.

**3.     Conclusion.**

Based on the evidence submitted and the arguments of the parties, the court finds for the defendants and dismisses this case as untimely given the contractual limitations period.  Resolution of the case for this reason makes it unnecessary to consider the more complex questions arising from the failure to maintain a complete copy of the administrative record.

SIGNED this 11th day of September, 2006.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

8